# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Amal Mohamud Yusuf,

        Plaintiff,

v.

United States,

        Defendant.

Civ. No. 15-1910 (MJD/BRT)

**REPORT AND RECOMMENDATION**

---

Amal Mohamud Yusuf, 5445 Smetana Drive #2106, Minnetonka, MN 55343, *pro se* Plaintiff.

James F. Bresnahan, II, Esq., United States Department of Justice, Tax Division, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Plaintiff Amal Mohamud Yusuf has sued the United States for over $286 million in damages, along with possible declaratory or injunctive relief, allegedly caused by a federal tax lien placed on her property, which she contends was based on an invalid tax assessment. (Doc. No. 1, Attach. 1, Compl.) The government has moved to dismiss Yusuf's complaint, chiefly for lack of subject-matter jurisdiction or failure to state a claim on which relief may be granted, and Yusuf has responded by filing two cross-motions not to dismiss her case. (*See* Doc. No. 5, Def.'s Mot. to Dismiss; Doc. No. 7, Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br."); Doc. No. 17, Pl.'s First Mot. to Not Dismiss the Case; Doc. No. 28, Pl.'s Second Mot. to Not Dismiss the Case.) The parties' motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Doc.

Nos. 12, 22, 23.) For the reasons stated below, this Court concludes that Yusuf's claims for relief from the underlying tax assessment, resulting lien, and any other collection efforts pursued by the Internal Revenue Service ("IRS") are subject to dismissal for lack of subject-matter jurisdiction or failure to state a viable claim for relief. Accordingly, this Court recommends that the government's motion to dismiss be granted and that Yusuf's opposing motions be denied.

## I. BACKGROUND

The federal tax liability at issue in this case stems from Yusuf's management of a nonprofit organization. In January 2004, while managing a tax-exempt nonprofit named the Somalian Women's Association ("SWA"), Yusuf transferred $63,282.88 in SWA funds to a for-profit company that she controlled, New Generation Foods.[1] (Compl. 1, 3; *see also* Doc. No. 20 at 1, 5–6.) Yusuf maintains that SWA "had been granted an implied contract" for a twenty-percent annual return on its investment in New Generation Foods, and that she authorized the transaction to bring in much needed revenue to support SWA's programs. (Compl. 1–2.) In 2005, following an audit of SWA, the IRS determined that the $65,282.88 transfer constituted a prohibited excess benefit transaction

---

[1] Yusuf variously refers to herself as "the manager and spokesperson" of SWA and the "President and CEO" of the organization. (*See* Compl. 2; Doc. No. 20 at 1.) She maintains that the transferred funds were used to pay the Center for Culinary Development in San Francisco, California, to develop products for New Generation Foods. (*See* Doc. No. 17 at 4; Doc. No. 19 at 5–6; Doc. No. 28 at 4; Doc. No. 29 at 4–5.)

and, accordingly, assessed a total of $148,512.77 in taxes against Yusuf.[2] (*See* Compl. 1; Doc. No. 20 at 4–5 & Attach. 1 at 32–33.) The tax liability soon ripened into a federal tax lien on Yusuf's property after she failed to pay the amount assessed. (*See* Compl. 3); *Pagonis v. United States*, 575 F.3d 809, 812 (8th Cir. 2009) ("[A]fter the assessment is made, the IRS must give notice of the assessment to the taxpayer and demand payment. If the taxpayer does not pay the amount assessed, then the amount automatically becomes a tax lien on all property belonging to the taxpayer and the IRS may proceed with further collection actions.") (citations omitted). The IRS later filed a notice of the lien in Hennepin County, Minnesota, where Yusuf resides, in December 2008.[3] (*See* Doc. No. 35, Def.'s Ex. 1.) By that time Yusuf's outstanding balance on her tax assessment had grown to $184,849.70. (*Id.*; *see also* Compl. 4.)

---

[2] Section 4958 of the Internal Revenue Code ("IRC"), which seeks to prohibit certain acts of self-dealing by those in charge of tax-exempt organizations, imposes hefty taxes on "excess benefit transactions," which are defined as "any transaction in which an economic benefit is provided by an applicable tax-exempt organization directly or indirectly to or for the use of any disqualified person if the value of the economic benefit provided exceeds the value of the consideration . . . received for providing such benefit." 26 U.S.C. § 4958(c)(1)(A). Disqualified persons include those who are "in a position to exert substantial influence over the affairs of the organization" before the transaction in question. *Id.* § 4958(f)(1)(A). The statute imposes a 25% tax on any such person involved in an excess benefit transaction, an additional 10% tax on "any organization manager" (e.g., officer, director, or trustee) who knowingly participated in the transaction, and a further 200% tax if the "excess benefit involved in such transaction is not corrected within the taxable period." *Id.* § 4958(a), (b), (f)(2). Yusuf was assessed each available tax under § 4958, which resulted in a total tax liability of $148,512.77. (*See* Doc. No. 20, Attach. 1 at 32–33.)

[3] A federal tax lien, which arises automatically by operation of law if an assessed tax is not paid after demand for payment, is effective "against a taxpayer without the necessity of filing a Notice of Federal Tax Lien." *In re Berg*, 188 B.R. 615, 618 (9th Cir. BAP 1995). Notice is only required to be effective against certain third parties. *Id.*

In July 2014, nearly a decade after the tax assessment and resulting lien, Yusuf filed a *pro se* complaint in Minnesota state court against the IRS (later replaced by the United States) challenging the validity of the assessment and, by extension, the propriety of the federal tax lien. (Compl.) The United States subsequently removed the action to federal court. (*See* Doc. No. 1, Def.'s Notice of Removal); 28 U.S.C. § 1442(a)(1) (providing that the United States may remove any action against it or one of its agencies to federal court). In her complaint, Yusuf alleges that the tax assessed against her for an excess benefit transaction was erroneous because she did not personally benefit from the $63,282.88 transfer to New Generation Foods, and she claims that the resulting lien has adversely affected her ability to obtain credit, jobs, housing, and invest in new business ventures. (*Id.* at 1–3; *see also* Doc. No. 20 at 7.) Yusuf, with little elaboration, further alleges that the IRS's actions impinged on her privacy and tortured her physically. (Compl. 3.) She requests over $286 million in monetary damages that the tax assessment and lien allegedly caused, including lost income and revenue. (*Id.* at 4.) She also appears to seek injunctive and declaratory relief regarding the assessment and lien. (*See id.*; Doc. No. 29, Pl.'s Mem. at 22.)

The United States has moved to dismiss Yusuf's complaint, primarily for lack of subject-matter jurisdiction or failure to state a claim on which relief may be granted. (*See* Def.'s Mot. to Dismiss; Def.'s Br.) The government's principal arguments are that Yusuf has not exhausted her administrative remedies before filing suit, which warrants dismissal either for lack of jurisdiction or failure to state a claim, and that her requests for injunctive and declaratory relief are barred by the Anti-Injunction Act and the

Declaratory Judgment Act. (*See* Def.'s Br. 1, 4–5, 13; Doc. No. 24, Def.'s Reply Mem. ("Def.'s Reply") 3.) In response, Yusuf has filed two motions to not dismiss her case, along with supporting memoranda, which elaborate on her basic argument that the tax assessment and resulting lien are invalid because she did not personally benefit from the SWA funds that she invested in New Generation Foods. (*See* Doc. Nos. 17, 19, 20, 28, 29.) She also asserts, again with little explanation, that the IRS's collection agent has assaulted, harassed, and intruded upon her privacy. (*See* Doc. No. 17 at 2; Doc. No. 28 at 2; Doc. No. 29 at 10, 15, 23.) It is not altogether clear whether the alleged assault, harassment, and breaches of privacy have all been caused by the lien itself, by any untoward actions taken by the IRS agent in attempting to collect the assessed tax, or both. (*See* Doc. No. 29 at 3, 10, 15, 22.)

## II. DISCUSSION

### A. Standard of Review

A court deciding whether to grant dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction must distinguish between a "facial attack," which is confined to determining whether the "plaintiff has sufficiently alleged a basis of subject matter jurisdiction," and a "factual attack," where "the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings [may be] considered." *Branson Label, Inc. v. City of Branson, Mo.*, — F.3d —, 2015 WL 4385589, at *3 (8th Cir. July 17, 2015) (quotations and brackets omitted). Here, the government has mounted both facial and factual attacks on subject-matter jurisdiction, asserting that Yusuf "has failed to both allege and actually exhaust" her

administrative remedies for challenging the IRS's tax assessment and subsequent collection efforts. (Doc. No. 7 at 5.) Thus, to the extent that an applicable exhaustion requirement is jurisdictional, rather than an element of Yusuf's cause of action, this Court may consider matters outside the pleadings in determining whether that requirement has been met.[4]

By contrast, in analyzing whether dismissal is warranted under Rule 12(b)(6) for failure to state a claim, a court generally must limit its inquiry to the pleadings, though "it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). A court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor; however, it need not accept "mere conclusory statements," including legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014); *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010).

To withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---

[4] In *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510, 515–16 (2006), the Supreme Court attempted to rein in the "profligate" use of the term "jurisdiction" by holding that a particular statutory requirement should be treated as "an element of a plaintiff's claim for relief, not a jurisdictional issue," if Congress has not clearly indicated that the requirement acts as a jurisdictional limitation on a statute's scope.

*Iqbal*, 556 U.S. at 678 (quotation omitted). But because lack of exhaustion is typically an affirmative defense, dismissal under Rule 12(b)(6) may only be granted where the failure to exhaust appears on the face of the complaint or the plaintiff effectively concedes the matter. *See Jones v. Bock*, 549 U.S. 199, 211–15 (2007) (holding that a prisoner need not plead and demonstrate exhaustion in his complaint because it is an affirmative defense, and generally noting that a complaint may be dismissed under Rule 12(b)(6) "when an affirmative defense appears on its face") (quotation and ellipsis omitted); *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011) (suggesting that a complaint may be dismissed under Rule 12(b)(6) for failure to exhaust if the "alleged failure to exhaust . . . appear[s] on the face of the complaint" or the plaintiff's "response to the motion to dismiss . . . resolve[s] the question"). Where that is not the case and a court must consider other materials outside the pleadings in resolving a Rule 12(b)(6) motion, it must convert the motion into one for summary judgment after providing the parties with an opportunity to present evidence in support of their respective positions. *See* Fed. R. Civ. P. 12(d); *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 798–800 (8th Cir. 2011); *Kim*, 632 F.3d at 719.

**B.     Yusuf's Damages Claims**

Yusuf seeks over $286 million in damages from the United States for what she alleges is an improper tax lien that was based on an invalid assessment. (*See* Compl. 1, 3–4.) Yusuf's complaint, however, does not identify any federal statute that allows her to sue the government for damages, nor do any of her other filings. That presents an initial problem for Yusuf because, as the government rightly notes, sovereign immunity shields

7

the United States from suit absent a waiver or consent that is unequivocally expressed in a federal statute. *See, e.g.*, *United States v. Bormes*, — U.S. —, 133 S. Ct. 12, 16 (2012); *FAA v. Cooper*, — U.S. —, 132 S. Ct. 1441, 1448 (2012). "[T]he United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (quotation and ellipsis omitted). Even where Congress has provided for a specific waiver of sovereign immunity, the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Id.* (quotation omitted); *see also United States v. Nordic Village Inc.*, 503 U.S. 30, 34 (1992) ("[T]he Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarged beyond what the [statutory] language requires.") (quotations, citations, and alterations omitted).

Nevertheless, given the duty to liberally construe *pro se* pleadings, this Court reads Yusuf's complaint as attempting to assert damages claims under 26 U.S.C. § 7422 for an invalid tax assessment and under § 7433 for unauthorized collection activities, both of which provide specific waivers to the government's sovereign immunity.[5] But, as

---

[5] In addition to these causes of action, the government construes Yusuf's complaint as arguably raising claims under § 7428 and § 7432, respectively, for improperly revoking SWA's tax-exempt status and failing to release the lien against her. (Doc. No. 7 at 4, 8–12.) This Court disagrees. Yusuf's complaint does not mention the revocation of SWA's tax-exempt status and, at the motion hearing held on July 14, 2015, she disclaimed any intention of challenging that action. As for § 7432, the statute allows a federal taxpayer to sue the government when the IRS fails to release a lien after the underlying tax liability has been fully satisfied or has become legally unenforceable. *See* 26 U.S.C. §§ 7432(a) and 6325(a)(1). It is undisputed that Yusuf's tax liability has not
(Footnote Continued on Next Page)

8

explained below, this Court lacks jurisdiction over any § 7422 challenge to the validity of the underlying tax assessment because Yusuf has not paid the disputed tax in full and sought a refund from the IRS, and Yusuf has failed to state a viable § 7433 claim for unauthorized collection activities.

   1. **Section 7422**

At heart, Yusuf's complaint and subsequent filings challenge the validity of the tax assessment that later matured into a federal tax lien on her property. Congress has provided a single statutory mechanism through which a taxpayer may challenge the validity of a tax assessment in federal district court — by bringing a refund action under § 7422. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, — U.S. —, 132 S. Ct. 2566, 2582 (2012) ("[T]axes can ordinarily be challenged only after they are paid, by suing for a refund."); *Johnston v. United States*, 915 F.2d 1557 (1st Cir. 1990) (explaining that § 7422 "establishes the exclusive mechanism by which a federal taxpayer may challenge a tax assessment in district court"); *accord McGraw v. United States*, 980 F.2d 735 (8th Cir. 1992); *Roberts v. C.I.R.*, 175 F.3d 889, 895 (11th Cir. 1999); *Williams v. United States*, 908 F.2d 968 (4th Cir. 1990); *Thompson v. United States*, 308 F.2d 628, 634 (9th

---

(Footnote Continued from Previous Page)
been fully satisfied and there are no allegations that the tax has become legally unenforceable, which means that § 7432 has no application in this case. Accordingly, this Court does not construe Yusuf's complaint as asserting any claims under § 7428 or § 7432. This Court also notes that the waiver of sovereign immunity provided by the Federal Tort Claims Act does not apply to cases, such as this, involving the assessment or collection of any tax. *See* 28 U.S.C. § 2680(c) (providing that the provisions of the FTCA "shall not apply to . . . [a]ny claim arising in respect of the assessment or collection of any tax").

Cir. 1962). Section 7422 provides that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a).

It follows that in order to maintain a damages action in district court based on an allegedly unlawful tax, a taxpayer must first pay the disputed tax in full and then exhaust her administrative remedies by filing a claim for a refund with the IRS.[6] *See, e.g.*, *Pagonis*, 575 F.3d at 812–13; *Robinson v. United States*, 920 F.2d 1157, 1159 (3d Cir. 1990); *Johnston*, 915 F.2d at 1557; *Thompson*, 308 F.2d at 634. Failure to abide by these requirements deprives a district court of jurisdiction over any damages claim contesting the validity or accuracy of a tax assessment. *See Flora v. United States*, 362 U.S. 145, 146, 177 (1960) (holding that "full payment of the assessment is a jurisdictional prerequisite" to bringing suit in federal district court under § 7422); *Bruno v. United States*, 547 F.2d 71, 74 (8th Cir. 1976) ("[Section] 7422 establishes a jurisdictional requirement that cannot be waived. The filing of a timely administrative claim for refund is a prerequisite to the bringing of a tax refund suit."); *see also Hoogerheide v. IRS*, 637 F.3d 634, 638 (6th Cir. 2011); *Galvez v. IRS*, 448 F. App'x 880, 886–87 (11th Cir. 2011).

---

[6] A federal taxpayer may, in the alternative, challenge an assessment in the U.S. Tax Court without prepayment of the disputed tax by filing a petition within ninety days of receiving a notice of deficiency. *See* 26 U.S.C. § 6213; *McGraw*, 980 F.2d at 735; *Williams*, 908 F.2d at 968; *Thompson*, 308 F.2d at 634. Yusuf has not availed herself of that process, but instead has chosen to file suit in federal district court.

It is undisputed that Yusuf has not paid the assessed tax, either in full or in part, and then filed an administrative claim for a refund with the IRS. This Court therefore lacks jurisdiction to entertain her damages claim against the government for issuing an allegedly invalid tax assessment and, by extension, improperly placing a federal tax lien on her property.[7] Her claims in that regard (which are the crux of her complaint) should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

2. **Section 7433**

Yusuf's complaint can also be read as attempting to raise a claim under § 7433, which permits a federal taxpayer to bring a civil damages action against the federal government where an IRS employee "recklessly or intentionally, or by reason of negligence, disregards" any IRC provision or attendant regulation "in connection with any collection of Federal tax." 26 U.S.C. § 7433(a). It is unclear from her complaint, as well as her subsequent filings, whether Yusuf is challenging the very existence of the federal tax lien based on the imposition of an allegedly erroneous assessment, which is not cognizable under § 7433, or whether she is challenging specific collection practices

---

[7] That Yusuf may not have the assets to pay the full tax assessment before bringing a refund action in district court does not excuse her from complying with § 7422's procedural requirements. *See Flora*, 362 U.S. at 175 (rejecting "the argument that requiring taxpayers to pay the full assessments before bringing suits will subject some of them to great hardship" because they have the right to "appeal the deficiency to the Tax Court without paying a cent" and, if they fail to do so, they "can hardly complain that [they have] been unjustly treated").

11

undertaken by IRS agents, which would be.[8] *See Shaw v. United States*, 20 F.3d 182, 184 (5th Cir. 1994) (explaining that § 7433, by its plain language, only authorizes suit against the government for "improper collection practices" on the part of "an agent trying to collect the taxes owed," not for improper tax determinations or assessments); *see also Miller v. United States*, 66 F.3d 220, 222–23 (9th Cir. 1995) (holding that § 7433 cannot be used to challenge the validity of a tax determination); *Gonsalves v. IRS*, 975 F.2d 13, 16 (1st Cir. 1992) ("Taxpayers who wish to challenge the IRS' calculation of their tax liability must file either a petition for redetermination in the Tax Court or a refund action in the district court. Section 7433 was not intended to supplement or supersede, or to allow taxpayers to circumvent, these procedures.") (citations omitted).

To the extent that Yusuf is asserting a damages claim that is actually cognizable under § 7433, that claim fails to state a viable ground for relief. First, the factual allegations in her complaint do not state a plausible claim that any IRS agent intentionally, recklessly, or negligently disregarded any IRC provision or IRS regulation in trying to collect the assessed tax. The complaint's vague and conclusory allegation that Yusuf "was impaired with intrusion of privacy and physically [] was tortured" is simply not enough to withstand dismissal for failure to state a plausible § 7433 claim for

---

[8] At times, Yusuf complains that the lien itself has "damage[d]" her body, affected her health, breached her privacy, hurt her feelings, and misled the public, all of which suggest that she is challenging the very existence of the lien, rather than specific collections actions taken by IRS agents. (*See* Doc. No. 29 at 3, 10, 15, 22.) At other times, she maintains that the IRS's collection agent assaulted and harassed her, specifically through the use of "magnetics and motion detectors . . . to numb [her] brain and body." (*See* Doc. No. 17 at 2; Doc. No. 20 at 4; Doc. No. 29 at 10.)

unauthorized collection activities.[9] *See Iqbal*, 556 U.S. at 678 (stating that "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," and that "naked assertions devoid of further factual enhancement," "labels and conclusions," and factual allegations that are "merely consistent with" a defendant's liability are not enough to withstand dismissal) (quotations and brackets omitted).

Second, it is clear that Yusuf has not exhausted the administrative remedies required under § 7433. *See* 26 U.S.C. § 7433(d)(1) ("A judgment for damages shall not be awarded . . . unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff with the [IRS].") To properly exhaust a § 7433 claim for unauthorized collection activities, a plaintiff must file an administrative claim with "the Compliance Technical Support Manager of the area in which the taxpayer currently resides," which includes the grounds for the claim, a

---

[9] Even if this Court could, consistent with Rule 12(b)(6), consider the factual allegations contained in Yusuf's filings in opposition to the government's motion to dismiss, it would still conclude that she has failed to allege sufficient facts to state a plausible violation of § 7433. Those filings contain similar conclusory allegations that she has been "assaulted" and "harasse[d]" in her private life by the IRS's collection agent. (*See* Doc. No. 17 at 2; Doc. No. 20 at 4; Doc. No. 29 at 10.) Such naked and unadorned assertions, which are merely legal conclusions couched as factual allegations, are not enough to withstand dismissal. *See Iqbal*, 556 U.S. at 678. And the only specific allegation regarding misconduct on the collection agent's part—the use of "magnetics and motion detectors . . . to numb [Yusuf's] brain and body"—is simply too fantastic for this Court to credit for purposes of Rule 12(b)(6). *See Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (explaining that a court may discount factual allegations that are "clearly baseless" because they are "fanciful," "fantastic," or "delusional"); *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 667 (D.C. Cir. 2013) (describing as "essentially fictitious" allegations such as "bizarre conspiracy theories, fantastic government manipulations of [the plaintiff's] will or mind, or supernatural intervention") (quotation and alterations omitted).

description of the injuries incurred, the dollar amount of the claim, and the name, address, telephone numbers, and taxpayer identification number of the claimant. 26 C.F.R. § 301.7433-1(e); *see also Lendway v. United States*, No. 05-1963, 2006 WL 2460720, at *3 (D.D.C. Aug. 23, 2006) ("Until the IRS rules on a properly filed claim, or six months pass without a ruling, no civil action for damages will lie.").

The government asserts that Yusuf has not complied with the administrative exhaustion requirement outlined in § 7433 and its attendant regulations, and Yusuf has effectively conceded the point in her filings in opposition to the government's motion to dismiss.[10] *See Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999) ("Some materials that . . . do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss."); *Hollis v. U.S. Dep't of Army*, 856 F.2d 1541, 1544 (D.C. Cir. 1988) (holding that a district court could consider a

---

[10] The government has also submitted a declaration from IRS revenue officer Deborah A. Olson, who avers that the office of the Compliance Technical Support Manager for Yusuf's district has no record of an administrative claim for damages filed by Yusuf regarding the IRS's efforts to collect the assessed tax. (Doc. No. 9, Ex. 1, Declaration of Deborah A. Olson ¶ 6.) Because this Court need not—and therefore does not—rely on that declaration in finding a lack of proper exhaustion, the government's request for dismissal under Rule 12(b)(6) does not have to be converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). And even if conversion were necessary, the government would be entitled to summary judgment on any § 7433 claim because Yusuf, despite having filed numerous motions, memoranda, objections, and exhibits in opposition to the government's motion to dismiss, has not submitted any evidence that creates a genuine issue of material fact as to whether she exhausted her administrative remedies in accordance with 26 C.F.R. § 301.7433-1(e). *See* Fed. R. Civ. P. 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion [for summary judgment].").

plaintiff's arguments in opposition to a motion to dismiss, which effectively conceded "that the critical facts, as portrayed by the [defendant], were not and could not be contested," without converting the motion into one for summary judgment). Although Yusuf generally asserts that she has "pursued all available options . . . before proceeding to legal action," the only specific actions that she references are contacting the IRS in 2010 to request release, removal, or discharge of the lien and later sending an offer of compromise in 2012 in an attempt to settle her underlying tax issues. (*See* Doc. No. 19 at 2–3; Doc. No. 20 at 5; Doc. No. 29 at 13, 15.) Those actions are not sufficient to administratively exhaust a § 7433 claim for unauthorized collection activities. *See* 26 C.F.R. § 301.7433-2(e). Because Yusuf's own statements in opposition to the government's motion to dismiss demonstrate that she has not properly exhausted any § 7433 claim that she may be seeking to pursue, that claim should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief may be granted.[11]

---

[11]     Prior to the Supreme Court's decision in *Arbaugh*, the Eighth Circuit described § 7433's exhaustion requirement as jurisdictional in nature. *See Porter v. Fox*, 99 F.3d 271, 274 (8th Cir. 1996). The Eighth Circuit has not revisited that characterization since *Arbaugh* was decided, though a number of other circuits have persuasively argued that § 7433's exhaustion requirement, unlike § 7422's requirement, should not be treated as jurisdictional under the principles laid down in *Arbaugh*. *See Gray v. United States*, 723 F.3d 795, 798 (7th Cir. 2013) (holding that exhaustion of administrative remedies under § 7433, though "a statutory requirement for recovery," is not a "jurisdictional prerequisite to suit" because the statute "contains no language suggesting that Congress intended to strip federal courts of jurisdiction when plaintiffs do not exhaust administrative remedies"); *Hoogerheide*, 637 F.3d at 638 (holding that § 7433's exhaustion requirement, unlike § 7422's requirement, is not jurisdictional because it only prohibits a "judgment for damages," not any suit or proceeding from being maintained); *Galvez*, 448 F. App'x at 887 ("Whereas the language of § 7422 states that 'no suit' shall be entertained by any court until the taxpayer has complied with appropriate administrative procedures, . . .

(Footnote Continued on Next Page)

## C. Yusuf's Requests for Injunctive and Declaratory Relief

Yusuf's complaint also appears to seek either injunctive or declaratory relief relating to the underlying tax assessment and resulting lien. (*See* Compl. 4; Doc. No. 29 at 22.) With certain statutory exceptions that Yusuf does not invoke and which are not otherwise applicable here, the Anti-Injunction Act ("AIA") provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The AIA seeks to preserve the federal government's ability to assess and collect taxes "without judicial intervention" by "withdraw[ing] jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes" and "requir[ing] that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 5–7 (1962); *see also Hibbs v. Winn*, 542 U.S. 88, 103 (2004) ("[T]he AIA shields federal tax collections from federal-court injunctions . . . ."). It ensures that, "once a tax has been assessed, the taxpayer ordinarily has no power to prevent the IRS from collecting it; [her] only recourse is to pay the tax in full, and then sue for a refund." *Jones v. United States*, 889 F.2d 1448, 1449–50 (5th Cir. 1989).

---

(Footnote Continued from Previous Page)
[§] 7433 merely state[s] that the taxpayer cannot recover damages unless he has complied."). Agreeing with that conclusion, this Court has analyzed Yusuf's failure to administratively exhaust a § 7433 claim under Rule 12(b)(6) rather than Rule 12(b)(1). Even if the Eighth Circuit were to ultimately conclude that § 7433's exhaustion requirement is jurisdictional under *Arbaugh*, dismissal of any § 7433 claim would still be warranted, albeit under a jurisdictional label rather than for failure to state a claim. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (refusing to remand where it "would only require a new . . . label for the same . . . conclusion").

Yusuf's attempt to enjoin the federal tax assessment and resulting lien clearly falls within the AIA's jurisdictional bar. While there are two judicially created exceptions to that bar, Yusuf has not alleged the applicability of either exception, nor could she successfully do so. *See Pomerenke v. Bird*, No. 12-1757, 2014 WL 30363, at *2 (D. Minn. Jan. 3, 2014) ("The plaintiff has the burden of establishing that [an] exception [to the AIA] applies."). It is far from apparent, under the most liberal view of the law and facts, that the assessed tax for an excess benefit transaction was improper,[12] and Yusuf otherwise has alternative legal avenues for challenging the tax and subsequent collection efforts. *See Enoch*, 370 U.S. at 6–7 (holding that the AIA does not apply where "it is clear that under no circumstances could the Government ultimately prevail" and "equity jurisdiction otherwise exists" because there is no adequate legal remedy); *South Carolina v. Regan*, 465 U.S. 367, 373 (1984) (holding that the AIA does not apply where Congress has not provided "an alternative legal way to challenge the validity of a tax"); *see also Pomerenke*, 2014 WL 30363, at *2 (concluding that jurisdiction was lacking over a taxpayer's claim for injunctive relief because he had "specific remedies available to him

---

[12] While Yusuf asserts that the transfer of SWA funds to New Generation Foods cannot be deemed an excess benefit transaction because she did not personally benefit from those funds, an "excess benefit transaction" under § 4958 is not limited to situations where a disqualified person actually gleans a personal economic benefit from the transaction. Instead, an "excess benefit" simply means that "the value of the economic benefit provided [by the tax-exempt organization] exceeds the value of the consideration . . . received for providing such benefit." *See* 26 U.S.C. § 4958(c)(1)(A)–(B). Thus, if a manager of a tax-exempt organization transfers funds to another company that he or she has a significant financial interest in, and the amount of those funds "exceeds the value of the consideration" received, an excess benefit transaction has occurred even if the recipient company ultimately squanders the funds and the manager never realizes a personal economic gain from the transaction.

17

to petition for a refund of any wrongfully-collected taxes, to request damages for failure to release a lien or to claim damages for unauthorized collection actions").

That the federal tax lien may have caused Yusuf serious economic injury does not allow her to evade the strictures of the AIA. *See Enoch*, 370 U.S. at 6 (explaining that a suit to enjoin the assessment or collection of federal taxes "may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise"); *Allen v. Cantrell*, No. 78-2142, 1978 WL 1258, at *6 (D. Kan. Dec. 27, 1978) ("[I]t has been consistently held that serious economic injury to plaintiff, even the destruction of a plaintiff's business, is not sufficient to avoid the prohibition of [the AIA]."). And Yusuf's insistence that the tax was wrongfully imposed and, thus, that the lien should never have issued does not allow her to seek injunctive relief in federal district court before paying the assessed tax and properly exhausting her administrative remedies. *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 10 (2008) ("The decisions of this Court make it unmistakably clear that [even] the constitutional nature of a taxpayer's claim is of no consequence to whether the prohibition against tax injunctions applies. This is so even through the [AIA's] prohibitions impose upon the wronged taxpayer requirements at least as onerous as those mandated by the refund scheme — the taxpayer must succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted.") (quotation and citation omitted).

Finally, to the extent that Yusuf seeks a declaration that either the underlying tax or resulting lien are invalid, the Declaratory Judgment Act expressly excludes suits with respect to federal taxes. *See* 28 U.S.C. § 2201(a) (barring declaratory judgments "with

respect to Federal taxes"); *Porter*, 99 F.3d at 274 ("[T]he Declaratory Judgment Act, 28 U.S.C. § 2201(a), like the Anti-Injunction Act, 26 U.S.C. § 7421, forbids suits for the purpose of restraining the assessment or collection of any tax."). The AIA and the Declaratory Judgment Act, respectively, deprive this Court of jurisdiction to entertain any requests for injunctive and declaratory relief from Yusuf's tax assessment or the lien issued on that assessment. Those claims should be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

### III. CONCLUSION

In sum, this Court concludes that Yusuf's challenges to the validity of the tax assessment and resulting lien, including her requests for injunctive and declaratory relief, should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. To the extent that Yusuf is alleging a cause of action under § 7433 for unauthorized collection activities, any such claim should be dismissed under Rule 12(b)(6) for failure to state a viable ground for relief. Accordingly, this Court recommends that the government's motion to dismiss be granted and that Yusuf's opposing motions be denied.

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The United States' motion to dismiss (Doc. No. 5) be **GRANTED**;

2. Yusuf's motions to not dismiss the case (Doc. Nos. 17 & 28) be **DENIED**;

3. Yusuf's damages claims relating to the validity of the tax assessment and resulting lien be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction;

4. Yusuf's damages claims relating to allegedly unauthorized collection activities be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted; and

5. Yusuf's requests for injunctive or declaratory relief be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.

Date: August 13, 2015

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation by **August 27, 2015**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.